IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


MAMIE ALVINA GILHAM,          *

      Plaintiff           *

vs.                        *

                             CASE NO. 3:04-CV-19 (CDL)

ATHENS LAND TRUST, INC., NANCY   *
STANGLE and NANETTE NELSON,
                         *

      Defendants

_____  *


O R D E R


Currently before the Court are Defendants' Motion for Summary Judgment [Doc. 33], Plaintiff's Motion to Dismiss [Doc. 40], Plaintiff's Motion for Summary Judgment [Doc. 41], Plaintiff's Motion for Clarification [Doc. 48], and Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. 44]. The Court grants Plaintiff's Motion to Dismiss her Title VII claim [Doc. 40]; denies as untimely Plaintiff's Motion for Summary Judgment [Doc. 41]; and grants Defendants' Motion for Summary Judgment [Doc. 33]. In light of the Court's granting summary judgment to Defendants, the Court denies as moot Plaintiff's Motion for Clarification [Doc. 48] and Defendants' Motion to Strike [Doc. 44].


BACKGROUND

This lawsuit arises from Plaintiff's employment with Defendant Athens Land Trust, Inc. ("ALT"), which was ultimately terminated by

Defendant.  Plaintiff contends that she was subjected to racial discrimination during her employment; that she was terminated because of her race; and that Defendant's termination of her employment was in retaliation for Plaintiff's filing of a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Construed in a light most favorable to Plaintiff, the record establishes the following facts.  See *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 918, 918-19 (11th Cir. 1993) (for summary judgment purposes the court must view the facts in the light most favorable to the non-moving party and draw all favorable inferences in favor of that party).

Plaintiff Mamie Alvina Gilham, an African American female, began her employment with Defendant Athens Land Trust, Inc. on January 13, 2002.  ALT is a non-profit corporation whose mission is to promote quality of life through integration of community and the natural environment by preserving land, creating energy-efficient and affordable housing, and revitalizing neighborhoods.  ALT has never employed more than six people at any one time, including both full-time and part-time employees.

ALT hired Plaintiff for a part-time position as the outreach coordinator.  Plaintiff applied for the position after it was advertised in a local newspaper as a part-time position paying $10.00 an hour.  In accordance with the job announcement, Plaintiff's starting pay rate was $10.00 per hour.  When she applied for the

outreach coordinator position, Plaintiff had a bachelor of arts degree in sociology and prior experience working for a nonprofit corporation. Although Plaintiff had no previous experience with affordable housing, conservation, or ALT, ALT selected Plaintiff for the position because of her knowledge of the Athens community. As the outreach coordinator, Plaintiff focused on identifying and working with potential affordable housing clients. Plaintiff's duties included running the housing program, looking for houses, educating people in her program on housing, learning rules and regulations on housing, supplying information to be included in reports and grant applications, preparing monthly reports to local government agencies, and fund-raising.

In March 2003, slightly more than a year after she was hired, Plaintiff received a $5.00 increase in her salary so that Plaintiff was making $15.00 per hour. At Plaintiff's request, in August 2003, Plaintiff became a full-time employee and was provided with sick leave pay, vacation pay, holiday pay, and health benefits.

During Plaintiff's employment, six other employees worked for ALT. When Plaintiff began her employment with ALT, ALT employed one other coordinator, Laura Hall Gabriel, a white female. Gabriel had been employed with ALT since October 2001 as the conservation coordinator, also a part-time position. Gabriel's starting salary was $15.00 per hour. When Gabriel was hired, she had a degree in landscape architecture, many years of experience as a landscape

3

architect, and prior experience with ALT. Ms. Gabriel had volunteered with ALT since 1997 (over three years prior to her employment), had served as a past president of the board of directors, and wrote the first grant to provide funding for ALT. As the conservation coordinator, Gabriel focused on acquiring and monitoring conservation easements and promoting land preservation. Her duties included running the conservation program, looking for land, educating the people in her program on conservation, learning rules and regulations on conservation, handling negotiations with landowners, filing and organizing legal documents, and fund-raising.

Nine months after Plaintiff began her employment with ALT, in September 2002, ALT hired Lizzie Saltz, a white female, for a part-time administrative assistant position. Saltz initially worked 20 hours per week at $9.00 per hour. In June 2003, her hourly rate was increased to $12.00 per hour, but her hours were reduced to 15 hours per week. When Salz was hired, she had a master's degree in fine arts, had worked as an administrative assistant for a large not for profit organization for several years, and had prior graphic design experience. Her duties included preparing ALT's newsletters, annual reports, and educational materials; processing invoices and check requests; handling the mail; and dealing with various office equipment issues. In August 2003, ALT hired Heather Benham, a white female, for a full-time project coordinator position with a starting salary of $15.00 per hour. When hired, Ms. Benham had earned a juris

doctorate from the School of Law at the University of Georgia and had a master's degree in historic preservation. Benham had also previously worked with ALT as an intern. As the project coordinator, Benham found new projects for ALT's ownership program, oversaw the bid/procurement process as per the HED and HUD requirements, and wrote and negotiated contracts with the contractors. Benham's duties also included overseeing the construction projects, preparing closing documents for ALT homeowners, maintaining the housing paperwork per HED and HUD requirements, and writing newsletter articles, brochure materials, and educational materials related to ALT's housing program.

When Plaintiff was hired, Defendant Nancy Stangle, a white female, served as the executive director ("ED"), a part-time position. Stangle resigned as ED approximately four months after Plaintiff began work, in May 2002, but continued to serve as a volunteer. In July 2003, ALT re-hired Stangle as the development coordinator, a part-time position for which she was paid $15.00 per hour. Stangle is a co-founder of ALT, has been actively involved as a volunteer since 1994, and has served as president of the board of directors.

After Stangle resigned the ED position, ALT hired Alana Maddox, a white female, for the position. ALT fired Maddox after Plaintiff complained that Maddox was discriminating against her. In early 2003, ALT hired Jeffrey Dean, an African American male, as the ED.

Dean did not successfully complete the probationary period, and left the position in April 2003.

After Jeffrey Dean left in April 2003, Plaintiff notified Defendant Stangle that she was interested in applying for the vacant ED position. Stangle informed Plaintiff that the position was not going to be filled. At that time, ALT began reviewing different jobs and job descriptions, in an effort to determine if there should be a restructuring of job duties and titles. In fact, discussions concerning staff reorganization and the future of the ED position began in December 2002, before Dean was hired.

ALT eliminated the executive director position in June 2003 and restructured its staff. As part of the restructuring, ALT changed the job titles from "coordinator" to "director," so that Plaintiff became the housing director and Stangle became the development director. Plaintiff and Stangle were both given some of the responsibilities that were formerly performed by the ED. However, as between Stangle and Plaintiff, Stangle received the bulk of the ED's supervisory authority. Specifically, Stangle was put in charge of the office and designated internally as the top person for office operations. It was during the time of this reorganization process that ALT hired Stangle as the development coordinator and increased Plaintiff's hours to full-time.

In October 2003, Plaintiff left ALT on medical leave due to medical problems she claims were caused by the discriminatory

6

treatment received while employed there.  On October 22, 2003, Plaintiff submitted a doctor's note indicating that she was undergoing medical treatment and would not be able to return to work until November 25, 2003.  On November 24, 2003, Plaintiff returned to work from her medical leave.  Plaintiff worked on November 24, 25, and 26; was off and paid for the Thanksgiving holidays (November 27 and 28); and then worked on December 1, 2, and 3.  Plaintiff's last day of work at ALT was on December 3, 2003.  After December 3, 2003, Plaintiff informed ALT that she was sick and unable to work.

On December 4, 2003 Plaintiff filed a race-based discrimination charge with the EEOC asserting that ALT discriminated against her by failing to select her as the executive director and paying her a lower salary than co-workers with similar responsibilities.  During December, Stangle attempted to arrange a meeting with Plaintiff to discuss her absence, but such a meeting did not occur.  On January 21, 2004, Plaintiff received a letter from Defendant Nanette Nelson requesting medical documentation to substantiate Plaintiff's medical leave.  Plaintiff emailed Nelson on February 2, 2004, stating that her doctor's appointment was scheduled for February 3, 2004, and that she would provide the medical documentation when she received it from her doctor.  The next day, on February 3, 2004, Plaintiff's attorney faxed a settlement demand letter to ALT indicating his intent to file a lawsuit on behalf of Plaintiff.  Nine days later, on February 12, 2004, ALT terminated Plaintiff from her position stating

that it had not received the requested medical documentation from Plaintiff's doctor and citing her unavailability to work since December 3, 2003, as the reasons for termination. On February 21, 2004, Plaintiff received the medical documentation from her physician.

Plaintiff then filed this suit against Defendants alleging racial discrimination and retaliation.

DISCUSSION

I.   Plaintiff's Motion to Dismiss

In her Motion to Dismiss, Plaintiff moves this Court to dismiss with prejudice her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, against all Defendants in this action due to this Court's lack of jurisdiction over the Defendants for purposes of Title VII. Defendants do not object to the dismissal of this claim. The Court agrees that it does not have jurisdiction over Plaintiff's Title VII claim.

In order to bring a claim under Title VII, the plaintiff must prove that the defendant is an "employer" under the act. To meet that definition, the defendant must employ fifteen or more employees. 42 U.S.C. § 2000e(b). It is undisputed that ALT has never employed more than six persons at any one time and is therefore not an "employer" under 42 U.S.C. § 2000e. Accordingly, Plaintiff's Motion to Dismiss is granted, and Plaintiff's Title VII claim is dismissed

with prejudice. *See Morrison v. Amway Corporation*, 323 F.3d 920, 927, 929 (11th Cir. 2003).

II. Plaintiff's Motion for Summary Judgment

Plaintiff filed her Motion for Summary Judgment over one month after the deadline for filing dispositive motions expired. Thus, Plaintiff's Motion for Summary Judgment is denied as untimely. *See, e.g., McElroy v. City of Macon*, 68 F.3d 437 (11th Cir. 1995); *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988).[1]

III. Defendants' Motion for Summary Judgment

Defendants filed a Motion for Summary Judgment to which Plaintiff has not responded. The Eleventh Circuit makes it clear that a "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather must consider the merits of the motion." *United States v. 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam)). A district court "must ensure that the motion itself is supported by evidentiary materials" and, at the least, "must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101-02. In

---

[1]Even if Plaintiff's motion had been timely, it would have been denied on the merits for the same reasons that Defendants' Motion for Summary Judgment is granted.

9

reaching the merits of Defendants' motion, the Court has reviewed the entire record of this case.

A.    Summary Judgment Standard

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. *See id.* at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. *See id.* at 254-55; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

10

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323.

B.   Plaintiff's Claims

1.   Racial Discrimination Claims

Plaintiff has sued the Defendants under 42 U.S.C. § 1981, alleging racially discriminatory treatment. Section 1981 guarantees to all persons in the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C.A. § 1981(a). Section 1981, like Title VII, prohibits discrimination on the basis of race. *See, e.g., Jackson v. Bellsouth*

*Telecomm.*, 372 F.3d 1250, 1269-70 (11th Cir. 2004). The Eleventh Circuit recognizes that claims alleging unlawful disparate treatment in employment under Title VII and § 1981 have the same substantive proof requirements and are analyzed under the same framework. *See, e.g., Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

In an action alleging disparate treatment, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of racial animus. *See, e.g., Cooper v. S. Co.*, 390 F.3d 695, 723 (11th Cir. 2004). Absent direct evidence, as is the case here, a plaintiff can establish intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

Under the *McDonnell Douglas* framework the plaintiff must create an inference of discrimination by establishing a prima facie case. Once the plaintiff has set out a prima facie case, a presumption of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's conduct. *Cooper*, 390 F.3d at 723. If the employer successfully rebuts the plaintiff's prima facie case, the presumption of discrimination is eliminated, and the plaintiff must then show that these reasons are pretextual, or present other evidence to show that discriminatory intent was more likely the cause of the employer's

12

actions. *Id.* at 724. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's reasons are pretextual, the employer is entitled to summary judgment on the plaintiff's claims. *Id.* at 725.

      a.   Salary Discrimination

Plaintiff asserts that ALT discriminated against her by paying her less than white co-workers who performed similar jobs. In order to state a prima facie case of intentional discrimination in compensation under *McDonnell Douglas*, Plaintiff must establish that (1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage. *Id.* at 734-35. Here, the evidence fails to show a similarly situated individual who was paid more than Plaintiff. Therefore Plaintiff cannot establish a prima facie case of discriminatory compensation, and Defendants are entitled to summary judgment on this claim.

In a comparator analysis, "the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to [her]." *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 n.16 (11th Cir. 1991). During the time period Plaintiff claims she was underpaid,

from January 2002 through March 2003,[2] there were only three other employees who could serve as possible comparators: Jeffrey Dean, the executive director; Lizzie Stalz, the administrative assistant; and Laura Gabriel, the conservation coordinator.[3] It is obvious Dean and Stalz are improper comparators: Dean's supervisory duties and responsibilities to run the office and oversee ALT's housing and conservation program, and Stalz's administrative duties and responsibilities, in no way compare to Plaintiff's responsibilities to identify and work with potential housing clients.[4] Therefore, Dean and Stalz warrant no further discussion. Laura Gabriel, on the other hand, does warrant further discussion.

While Gabriel, as the conservation coordinator, and Plaintiff, as the outreach coordinator, did have similar job duties, the Court finds Gabriel an improper comparator. Gabriel, unlike Plaintiff, had

---

[2]From January 2002, when Plaintiff was hired, through March 2003, Plaintiff was paid $10.00 per hour. In March 2003, Plaintiff received a raise to $15.00 per hour. After her raise in March 2003, Plaintiff was paid the same as the highest paid employee. Therefore, in analyzing her discrimination in compensation claim, the only relevant time period is from January 2002 through March 2003.

[3]Nancy Stangle and Heather Benham were hired after March 2003, both with starting salary of $15.00 per hour. When they were hired, ALT had already increased Plaintiff's hourly pay to $15.00 per hour so that they were all making the same amount. Therefore, Stangle and Benham are not proper comparators.

[4]In her deposition, Plaintiff points to Stalz's pay raise after only nine months working at ALT (as opposed to Plaintiff's pay raise after a year and a half), as evidence of discrimination. The Court finds this argument without merit. Although Stalz did receive a raise from $9.00 per hour to $12.00 per hour nine months prior to Plaintiff receiving her raise, Stalz's hours were reduced from 20 hours to 15 hours per week so that, in total, she did not receive more money.

extensive experience at ALT.  Although Gabriel had been formally hired as the conservation coordinator only three months before Plaintiff, Gabriel had been involved with ALT as a volunteer since 1997, had served as president of ALT's board of directors, and wrote the first grant to provide funding for ALT.  Plaintiff had no such prior experience.  These facts alone make Gabriel and Plaintiff improper comparators.  *See Cooper*, 390 F.3d at 743 (affirming district court's finding that plaintiff failed to establish a prima facie case of discrimination in compensation because, due to their prior experience, the employees were improper comparators).

Even if Plaintiff had established a prima facie case on her compensation claim, Defendants are still entitled to summary judgment because there is no genuine issue of material fact as to whether ALT's proffered reasons for the pay disparity are merely pretext for discrimination.  As previously discussed, Gabriel's experience with ALT would certainly justify ALT paying Gabriel a higher starting salary than Plaintiff who had little experience, and there is absolutely no evidence to suggest that the pay disparity between Plaintiff and Gabriel was racially motivated.  Plaintiff was hired as the outreach coordinator after responding to an advertisement in the local newspaper.  The $10.00 per hour pay that Plaintiff received was that which was advertised in the job announcement and determined before ALT had any idea who would apply for or fill the position.

b.   Failure to Promote

Plaintiff also alleges that, based on her race, ALT denied her a promotion from the outreach coordinator position to the executive director position.   Plaintiff contends that in April 2003, after Jeffrey Dean left, she told Nancy Stangle and the ALT Board that she wanted the open ED position.   Plaintiff argues that although ALT told her the ED position would be eliminated, the position was, in fact, given to Nancy Stangle.

In order to establish a prima facie case of discriminatory failure to promote absent direct evidence, Plaintiff must establish that (1) she belongs to a racial minority; (2) she was qualified for and applied for a position the employer was trying to fill; (3) she was denied the position; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997); *see also Cooper*, 390 F.3d at 724 n.16.

The Court will assume, without deciding, for purposes of summary judgment, that Plaintiff is able to establish a prima facie case of discriminatory failure to promote.   There is evidence to indicate that Stangle rather than Plaintiff was, effectively, promoted to the ED position:  She was given some of the ED's responsibilities, was put in charge of the office, and designated internally as the top person for office operations.   Even assuming Plaintiff can establish

16

a prima facie case, Defendants are, nonetheless, still entitled to summary judgment.

ALT's legitimate, non-discriminatory reason for selecting Stangle is sound. ALT's executive committee believed that Stangle was the most qualified to run the office: She had prior experience as the ED, having served as the ED for almost three years from August 1999 to May 2002; she was a co-founder of ALT; she had been a volunteer since ALT's inception; and she had served on ALT's board of directors. Plaintiff did not have the extensive experience that Stangle had. Plaintiff had only been working for ALT for a year and a half in July 2003 when Stangle was re-hired as the development coordinator. Furthermore, there is evidence that Plaintiff was derelict in some of her duties: She did not fulfill her responsibility of preparing monthly reports to the local government agency and complained about writing letters, preparing agendas for meetings, being in the office, doing financial tasks, and public speaking. Thus, the Court readily concludes that ALT's reasons for putting Stangle in charge of the office over Plaintiff were legitimate and non-discriminatory in nature.

Having established a legitimate, non-discriminatory reason for promoting Stangle over Plaintiff to the ED position, the burden shifts to Plaintiff to "meet [the proffered] reason head on and rebut it, and [Plaintiff] cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Plaintiff must

show that "the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have been chosen the candidate selected over [Plaintiff].'" *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160 (11th Cir. 2006) (quoting *Cooper*, 390 F.3d at 732 and citing *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) as approving this language from *Cooper*).

It is clear on this record that Plaintiff cannot meet her burden to show that ALT's proffered reasons for selecting Stangle over her were a mere pretext for discrimination. Nothing in the record shows that the disparities between Plaintiff's qualifications and Stangle's qualifications were so severe that no reasonable person could have chosen Stangle over Plaintiff. Indeed, the Court could find *no* evidence challenging ALT's contention that it chose Stangle based on her experience and firsthand knowledge of ALT. This Court is not in the position to second-guess the decisions made by employers in the course of their business. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (Federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); *see also Chapman*, 229 F.3d at 1030 (Federal courts should not serve as a "super-personnel department that reexamines an entity's business

decision.") (citation omitted). Therefore, ALT is entitled to summary judgment on Plaintiff's discriminatory failure to promote claim.

> c. Termination of Employment

Plaintiff also alleges that she was unlawfully terminated based on her race. In order to establish a prima facie case of discriminatory termination, Plaintiff must show (1) that she belongs to a racial minority; (2) that she was subjected to adverse job action; (3) that her employer treated similarly situated employees outside her classification more favorably; and (4) that she was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *see also Coutu v. Martin County Bd. of Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995). Because the evidence fails to establish a similarly situated white employee who was treated more favorably than Plaintiff, Plaintiff cannot establish a prima facie case of discriminatory termination, and Defendants are also entitled to summary judgment on this claim. *See id.* ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (citation omitted).

In determining whether employees are similarly situated for a discriminatory termination claim, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.*

(citation omitted). The evidence here shows that Plaintiff, after returning from a month of medical leave, missed over two months of work without providing ALT any valid excuse. Despite ALT's request, Plaintiff failed to provide medical documentation excusing her absences and gave no indication when she would return to work. The record is devoid of evidence of a similarly situated employee who was treated more favorably than Plaintiff. Therefore, Plaintiff fails to establish a prima facie case.

Even if Plaintiff had established a prima facie case of discriminatory termination, ALT is still entitled to summary judgment. ALT has met its burden of presenting legitimate, non-discriminatory reasons for terminating Plaintiff. Plaintiff's unavailability to work for over two months, her failure to provide a valid medical excuse for her absences, and her failure to indicate when she would return to work are legitimate, non-discriminatory reasons for terminating Plaintiff, especially for a non-profit, small business working with a small staff of employees. Plaintiff has presented absolutely no evidence that these reasons for terminating Plaintiff were racially motivated and merely pretext for discrimination.

2. Race Retaliation Claims

In addition to her racial discrimination claims, Plaintiff contends that Defendants terminated her employment with ALT in retaliation for filing a discrimination complaint with the EEOC.

20

Because Plaintiff has presented only circumstantial evidence of retaliation and no direct evidence, proof of retaliation is controlled by the familiar *McDonnell Douglas* framework discussed *supra*.

To establish a prima facie case of retaliation, Plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered adverse employment action; and (3) that there is some causal relationship between the two events.[5] *Holyfield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

In this case it is clear that Plaintiff establishes a prima facie case of retaliation. She engaged in statutorily protected expression by filing a complaint with the EEOC, and she suffered adverse employment action when she was terminated from her position. There is also sufficient evidence supporting a causal connection for purposes of Plaintiff's prima facie case. The causal link requirement is construed broadly so that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Coutu*, 47 F.3d at 1074 (citation omitted). The Eleventh Circuit has plainly held that a plaintiff

---

[5]Although the prima facie case of retaliation was developed in the Title VII context, the Eleventh Circuit recognizes that § 1981 prohibits retaliation based on the exercise of rights protected by § 1981, such as the right to challenge racial discrimination. *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998). Although the Eleventh Circuit has not explicitly held that the elements of a § 1981 retaliation claim are the same as the elements of a Title VII retaliation claim, because the parties do not argue the analysis is different, the Court sees no reason why the Title VII standard should not apply here. *See Tucker v. Talladega City Sch.*, 171 Fed. Appx. 289, 296 (11th Cir. 2006).

satisfies the causal link requirement if she "provide[s] sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (citations omitted). There is no dispute that ALT was aware of Plaintiff's EEOC complaint, and there is certainly no question regarding the close temporal proximity between ALT's awareness of the complaint and Plaintiff's termination. Plaintiff filed her EEOC complaint on December 4, 2003. On February 3, 2003, Plaintiff's attorney faxed ALT a settlement demand letter and informed ALT of his intent to file a lawsuit on behalf of Plaintiff. Nine days later, on February 12, 2004, ALT notified Plaintiff that she was terminated. The Court finds that under these circumstances Plaintiff has established a prima facie case.

Although Plaintiff satisfies her prima facie case of retaliation, summary judgment is nonetheless appropriate for Defendants because Plaintiff cannot raise a genuine issue of material fact that Defendants' legitimate, non-retaliatory reasons for terminating her were merely pretext for retaliation. As discussed above, ALT terminated Plaintiff because of her unavailability to work for over two months, clearly a legitimate, non-retaliatory reason for termination. Plaintiff's only evidence of pretext is the very short time period between ALT's awareness of the filing of her EEOC

complaint and her termination. The Court finds that temporal proximity alone in this case is not enough to create a genuine issue of material fact as to pretext.

Temporal "proximity does not conclusively prove retaliation in light of the other circumstances surrounding [a plaintiff's] termination." *Palmer v. Stewart County Sch. Dist.*, 178 Fed. Appx. 999, 1003 (11th Cir. 2006). As other courts in this circuit have held, "any inference of retaliatory intent otherwise created by a short lapse of time can be dispelled when intervening factors are established." *Hooker v. Fulton Co., Ga.*, 2006 WL 2617142, *18 (N.D. Ga., Sept. 12, 2006) (collecting cases). Here, almost a month and a half after Plaintiff filed her EEOC complaint, ALT gave Plaintiff the opportunity to provide medical documentation to substantiate her absences from work. Plaintiff said she would provide the documentation on February 3, 2004. Instead, on that date, ALT received the letter from Plaintiff's attorney indicating Plaintiff's intent to file a lawsuit but did not receive the requested medical documentation. Almost two weeks later, still having not received the medical documentation and having no indication when Plaintiff would return to work, ALT terminated her. The Court finds under these circumstances that Plaintiff has failed to produce sufficient evidence from which a reasonable jury could conclude that ALT's stated reasons were a pretext for retaliation based on complaints of

23

discrimination and/or the filing of the EEOC complaint. Accordingly, summary judgment is warranted on this claim.

CONCLUSION

Defendants' Motion for Summary Judgment [Doc. 33] is granted as to all claims. Plaintiff's Motion to Dismiss [Doc. 40] is granted. Plaintiff's Motion for Summary Judgment [Doc. 41] is denied. Plaintiff's Motion for Clarification of Order to Extend Discovery [Doc. 48] and Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment [Doc. 44] are denied as moot.

IT IS SO ORDERED, this 7th day of February, 2007.


S/Clay D. Land
　　　CLAY D. LAND
UNITED STATES DISTRICT JUDGE